IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERMAN POSEY, JR.,                           )
                                             )
                    Plaintiff,               )      Civil Action No. 2:12-cv-955
         v.                                  )
                                             )      Judge Mark R. Hornak
SWISSVALE BOROUGH, OFFICER                   )
JOHN A. CORRADO, JR., OFFICER                )
JOHN R. MERCALDE, CHIEF OF                   )
POLICE GREG GEPPERT, and OFFICER             )
WILLIAM HAUN,                                )
                                             )
                    Defendants.              )

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Herman Posey's most recent problems appear to have their genesis in a pizza deliveryman's inability to keep addresses straight. When Mr. Posey's pie was sent across the street to the home of his police officer neighbor, trouble broke out. This is a § 1983 case rising from the subsequent criminal prosecution of Mr. Posey, which came on the heels of that delivery miscue. He alleges that several police officers of Swissvale Borough, Pennsylvania, including his pizza-receiving neighbor, violated his federal and state constitutional rights in that process.

Pending before the Court is Defendants' Motion to Dismiss. Notwithstanding the seemingly innocuous start to the parties' dispute, that Motion, and Mr. Posey's claims, present substantial and intricate questions of federal procedural and civil rights law. Defendants seek to have all of Mr. Posey's federal claims dismissed, leaving only his state claims of intentional infliction of emotional distress, malicious prosecution, and defamation, which they want sent to state court. Having carefully considered Plaintiff's Amended Complaint, ECF No. 14;

Defendants' Motion to Dismiss, ECF No. 17, and Brief in Support, ECF No. 18; and Plaintiff's

Response, ECF No. 20, and Brief in Opposition, ECF No. 21, Defendants' Motion is granted in

part and denied in part.

## I.   BACKGROUND AND FACTS

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must

accept as true the factual allegations in the Complaint and draw all reasonable inferences in the

Plaintiff's favor. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).   Therefore, for the

purposes of this decision, the essential facts are as follows.

Herman Posey ("Mr. Posey") did not get along with his two brothers, Joseph and Elijah

Posey.[1]   Joseph was Mr. Posey's tenant, until Joseph became delinquent on his rent and stole

property belonging to Mr. Posey, and Mr. Posey evicted him. Am. Compl. ¶ 10.  On October 19,

2010, Mr. Posey noticed that his mobility scooter and a lawn mower were missing from his shed.

*Id.* ¶ 13.  Mr. Posey suspected that one of his brothers might have stolen the items. *Id.* ¶ 15.  That

same day, Mr. Posey went to the Swissvale Borough Police Department and reported the missing

goods, though he never mentioned his suspicion that one of his brothers might be responsible. *Id.*

¶ 14.   The report was filed by Defendant Officer John R. Mercalde ("Officer Mercalde") and

approved by Defendant Chief of Police Greg Geppert ("Chief Geppert").   *Id.* Ex. A.

Around November 9, 2010, Joseph went to the Swissvale Police Department, seeking to

file a police report against Mr. Posey for stealing Joseph's Social Security Disability Check.  *Id.*

¶ 15.   While Joseph was there, Officer Mercalde questioned him about Mr. Posey's reported

stolen items. *Id.* ¶ 16. Joseph told Officer Mercalde that the mobility scooter was not stolen, but

in fact Mr. Posey had sold it to their other brother Elijah for $1,000. *Id.*  Defendant Officer John

---

[1] For ease of reference, Mr. Posey's brothers are referred to as "Joseph" and "Elijah," respectively.  Such use of
more familiar names is intended solely to avoid confusion among references to the various members of the Posey
family.  No disrespect is intended to either of Mr. Posey's brothers by the use of this name convention.

Corrado ("Officer Corrado") questioned Elijah, who confirmed that he had purchased the mobility scooter for $1,000, and that the scooter was located at his residence. *Id.* ¶ 17.

On November 23, 2010, Officer Corrado went to Elijah's residence, where he found a mobility scooter, and took it into custody. *Id.* ¶ 18-19. Apparently Officer Corrado discussed his actions with Joseph and Elijah, but not with Mr. Posey, and he did not seek any further evidence to support Joseph and Elijah's statements that the scooter had been purchased from Mr. Posey. *Id.* ¶ 18.

Coincidentally, Officer Corrado lived across the street from Mr. Posey. *Id.* ¶ 20.  Officer Corrado was aware of the disputes between the Posey brothers, and on several occasions had trespassed onto Mr. Posey's property and berated him regarding the eviction of Joseph, saying in particular that Mr. Posey was not abiding by the law when he sought Joseph's eviction. *Id.* ¶ 11-12.  The situation came to head on January 2, 2011, when Mr. Posey ordered a pizza from Domino's. *Id.* ¶ 20.  The driver mistakenly delivered the pizza to Officer Corrado's residence, which prompted an enraged Officer Corrado to go to Mr. Posey's residence. *Id.* ¶ 21. Once there, Officer Corrado summoned Defendant Officer William Haun ("Officer Haun"), who told Mr. Posey that "he would issue a citation to Plaintiff if pizza was ever mistakenly delivered to the wrong address again." *Id.*[2]

The next day, on January 3, 2011, Officer Mercalde filed a Police Criminal Complaint, charging Mr. Posey with two counts: (1) Filing a False Report to Law Enforcement, Pa. Cons. Stat. § 4906(b)(1), and (2) Theft by Deception, 18 Pa. Cons. Stat. § 3922, "alleging that Mr. Posey improperly received $1000 for his scooter." *Id.*

---

[2] It is not readily apparent to the Court that Pennsylvania has proscribed, by criminal sanction, the misdelivery of a pizza.

The account as related in the Amended Complaint resumes on February 23, 2011, but a study of the relevant state court docket, MDJ Docket No. CR-0000005-11, and accompanying court documents attached to Defendants' Motion to Dismiss reveals several relevant intervening events not set out in the Amended Complaint.[3] The charges were initiated against Mr. Posey by way of a summons on January 4, 2011, instructing him to appear for fingerprinting by January 31, 2011, and for a preliminary arraignment on February 9, 2011. Summons Criminal Case, ECF No. 17-1; Fingerprint Order, ECF No. 17-10. That proceeding was rescheduled for February 16, 2011 at 9:00 a.m. Criminal Dkt., ECF No. 17-2 at 1. Mr. Posey did not appear at the 9:00 a.m. hearing, and a bench warrant was issued for his arrest at 10:56 a.m. Bench Warrant, ECF No. 17-4. The preliminary arraignment was rescheduled for 3:15 p.m. that afternoon. Prelim. Arraignment Notice, ECF No. 17-5.

Mr. Posey had initially been Released on Recognizance ("ROR"), requiring that Mr. Posey appear at the proceedings against him, keep his address current, and comply with other ancillary requirements. Bail Bond, ECF No. 17-9; ECF No. 17-2 at 2. It appears that Mr. Posey failed to stay for the duration of his 3:15 P.M. preliminary arraignment on February 16, and as a result, the Magisterial District Judge changed his bail from an ROR to $5,000 Straight Bail. Criminal Dkt., ECF No. 17-2 at 2. It appears that Mr. Posey spent the night of February 16 in the Allegheny County Jail, and posted bail the morning of February 17, Current Bail Info., ECF No. 17-7. His preliminary hearing was then set at February 23, 2011. Criminal Dkt., ECF No. 17-2 at 1.

---

[3] The Court takes judicial notice of the state court docket and records. *See Dec v. Pennsylvania State Police*, 2:12-CV-565, 2012 WL 6099078, at *2 n.3 (W.D. Pa. Dec. 7, 2012). A state court docket is a "public record" that the Court may consider at the motion to dismiss stage. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

Mr. Posey alleges that *after* the February 23 preliminary hearing, he was incarcerated for three (3) days until he posted $5,000 bail. Am. Compl. ¶ 23. The case was then transferred to the Court of Common Pleas of Allegheny County, Dkt. No. CP-02-CR-0002547-2011, and was scheduled for a non-jury trial in August 16, 2011. All parties were present for the August 16 trial, including Elijah and Joseph Posey, but when Mr. Posey's counsel approached the ADA and showed the ADA that both Elijah and Joseph had extensive criminal records that would be used to impeach them, the ADA allegedly decided that the charges against Mr. Posey would be dropped. *Id.* ¶ 27. However, Officer Corrado objected, asked that a continuance be sought, and stated to the ADA, "I'm going to the [Veteran's Administration] and tell them what a real criminal [Plaintiff] is." *Id.* ¶ 28.

The trial was twice more continued until November 28, 2011, although this allegedly was not the fault of any government actor. *Id.* ¶¶ 29, 32. When neither of the other two Posey brothers nor the Defendant Officers appeared on November 28, the ADA asked for and received another continuance. On December 20, 2011, the date on which the trial was supposed to commence, the ADA filed a petition for *nolle prosequi* and dismissed the charges. *Id.* Ex. 1.

Additionally, sometime around August 16, 2011, Officer Corrado "verbalized to the Veteran's Administration (VA) that Plaintiff was a 'criminal.'" *Id.* ¶ 30. He "convinced  a staff member at the VA, Tammy Proctor, to switch the first three (3) numbers on Plaintiff's account for direct deposit of his VA disability payments." *Id.* ¶ 31. The result of this action was that the regular deposits to Mr. Posey's account were not made, which caused several of his checks to bounce. *Id.*

On July 10, 2012, Mr. Posey filed this suit alleging that Officers Corrado, Mercalde, Haun, Chief Geppert, acting in their individual and official capacities, and the Swissvale

Borough violated his federal constitutional rights and committed state law torts. Compl., ECF No. 1. On October 8, 2012, after Defendants moved to dismiss all of Mr. Posey's federal claims, Mr. Posey filed an Amended Complaint. ECF No. 14. The first seven counts are asserted under 42 U.S.C. § 1983, as follows: Counts I and II, Fourth Amendment Unlawful Seizure/False Arrest; Counts III and IV, Fourth Amendment Malicious Prosecution; Count V, Failure to Train and Supervise (§ 1983); Count VI, Conspiracy to Violate Civil Rights (§ 1983); Count VII; Conspiracy to Violate Civil Rights; Denial of Equal Protection, §§ 1983 and 1985(2). *Id.* ¶¶ 50-87. The Amended Complaint also makes a single reference to "deprivation of rights secured by" the "First, Sixth, and Fourteenth Amendments" and one reference to substantive and procedural due process rights under Count I. *Id.* ¶¶ 2, 53. In his Response to the Motion to Dismiss, Plaintiff specifies that he is claiming violations of his substantive and procedural due process rights under the Fourteenth Amendment regarding several of the Defendants' actions. ECF No. 21 at 28-31. Counts VIII-X comprise state law tort claims of intentional infliction of emotional distress, malicious prosecution, and defamation.

Defendants timely filed a Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 18, again asking that this Court dismiss all of Plaintiff's federal law claims, and then decline to exercise supplemental jurisdiction over the remaining state law claims. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler,* 578 F.3d at 211.

## III.    DISCUSSION

Section 1983 provides a vehicle to assert claims for violation of an individual's federal constitutional rights. *Dique v. N.J. State Police,* 603 F.3d 181, 185 (3d Cir. 2010).    When analyzing a § 1983 claim, the court's initial inquiry must focus on two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981); *see also Harvey v. Plains Twp. Police Dep't,* 421 F.3d 185, 189 (3d Cir. 2005).    The individual defendants, who are all police officers, do not dispute that they were acting under the color of law in this case.    Therefore, the Court need only consider the second requirement of § 1983 – whether a constitutional violation has been asserted.

Whether a constitutional violation is claimed to have occurred is also a prerequisite for a § 1983 defendant's assertion of qualified immunity. In general, the doctrine of qualified immunity shields government officials from defending a claim of civil liability when they perform discretionary functions. *Wilson v. Layne,* 526 U.S. 603, 609 (1999). A government official, such as a police officer, will be entitled to qualified immunity from suit unless (1) the officer's conduct violated a constitutional right possessed by the plaintiff and (2) the right was "clearly established" at the time of the officer's allegedly unconstitutional conduct. *Giles v.*

*Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009). These two steps need not be applied in sequence, and a trial court may exercise its discretion to craft the most effective analysis given the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223, 236, 242 (2009). As explained by a unanimous United States Supreme Court in *Pearson*, "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 237. Because qualified immunity is not merely a defense to liability, but renders a defendant completely immune to suit, a court should determine at the earliest possible stage whether a grant of qualified immunity would be proper given the facts of the case taken in the light most favorable to the plaintiff. *Giles*, 571 F.3d at 325-26.

### A. Fourth Amendment Claims

Mr. Posey alleges that his Fourth Amendment rights were violated by an unlawful arrest and a malicious prosecution. In order to make out either a claim of Fourth Amendment false arrest or malicious prosecution, an individual must first show that he was "seized for Fourth Amendment purposes." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000). Our Court of Appeals has adopted a concept of "continuing seizure" which holds that "when the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment." *Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011).[4]

In two opinions, the Third Circuit set the guideposts for what constitute "constitutionally significant restrictions" on an individual before his trial, as aptly summarized by the court in *Benard v. Washington County*, 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006):

---

[4] The theory was espoused by Justice Ginsburg in her concurring opinion in *Albright v. Oliver*, 510 U.S. 266, 278-79 (1994).

In *DiBella* [*v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir.2005)], the Court explained that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *Id.* at 603. As an example of restrictions amounting to a seizure, the Court in *DiBella* recited facts from the case of *Gallo v. City of Philadelphia,* 161 F.3d 217 (3d Cir.1998), and explained:

> "The plaintiff in *Gallo* was arrested for arson and posted a $10,000 bond; he was prohibited from traveling outside of Pennsylvania and New Jersey, required to contact Pretrial Services on a weekly basis, and required to attend all court hearings including his trial and arraignment. This court concluded that 'although it was a close question, we agree with Gallo that these restrictions amounted to a seizure.'"

407 F.3d at 602, citing *Gallo,* 161 F.3d at 222. In contrast, a Fourth Amendment seizure did not occur in *DiBella* where a plaintiff was issued a summons, but was not arrested, did not post bail, was free to travel, did not have to report to pretrial services, and was simply required to attend trial. *DiBella,* 407 F.3d at 603.

Turning to the facts of the case before it, the *Benard* court held that where the plaintiff was arrested, but released on her own recognizance, was required to notify the court and bail authority if she changed her address, and was required to attend court proceedings, there was no seizure. *Id.* Similarly, in *Roach v. Marrow,* 3:08-CV-1136, 2012 WL 1059741, at *8-9 (M.D. Pa. Mar. 28, 2012), the court held that where a plaintiff was charged by way of summons in the mail and never arrested, who did not have to post a money bond, had no travel restrictions imposed, and whose only bond restriction was that he could not contact any victims or witnesses until the trial, there was no seizure.

Like the individuals in *DiBello, Bernard,* and *Roach,* Mr. Posey initially had very few restrictions placed upon him due to his criminal prosecution. He was not arrested, but charges were preferred by way of a summons being issued. He was not required to post any money for bail, but was released on his own recognizance. The conditions of bail only required him to appear at the proceedings against him, keep his address current, comply with orders of court, and

refrain from engaging in criminal activity or witness intimidation. *See* ECF No. 17-9. Based on these facts, Mr. Posey was not subjected to a "seizure" under the Fourth Amendment.

Although Mr. Posey's bail was changed, resulting in his incarceration for a brief period of time, this does not resuscitate his constitutional claim. Mr. Posey's bail was changed from "ROR" to $5,000 only when he refused to appear at his own preliminary hearing, and after the judge had issued a bench warrant for his arrest. Thus, it was not until *that* point that Mr. Posey was "seized." None of the Defendant Officers played any role in the issuance of the bench warrant, and therefore, they cannot be liable for any seizure Mr. Posey suffered as a result of its issuance under § 1983. *See DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (applying 'continuing seizure' theory; holding no Fourth Amendment § 1983 claim against police officers who charged defendant issued summons, where defendant only arrested after bench warrant); *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (same) ("We hold that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."); *Delgado v. Hajicek*, CIV 07-2186 RHK/RLE, 2008 WL 2042606 (D. Minn. May 12, 2008), *aff'd in part*, 317 F. App'x 571 (8th Cir. 2009). Because Mr. Posey was not "seized" within the meaning of the Fourth Amendment, his claims of false arrest and malicious prosecution in Counts I, II, III, and IV are dismissed with prejudice.

## B. First Amendment Claims

Mr. Posey asserts that his First Amendment rights were violated when the Defendant Officers retaliated against him for his speech in (1) ordering a pizza and (2) filing a police report for the theft of his property. Resp. at 26. In order to state a § 1983 claim for First Amendment retaliation, a plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that

defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007).

### 1. *Ordering a Pizza*

Mr. Posey asserts that Officer Corrado retaliated against him in violation of the First Amendment for ordering a pizza that mistakenly arrived at Officer Corrado's house. *See* Resp. at 27. "Plaintiff exercised his free speech when he ordered a delivery pizza."). Here, Plaintiff fails to meet the first element of a retaliation claim, because ordering a pizza is not speech protected by the First Amendment. In the realm of a First Amendment retaliation case, a plaintiff's speech need not be of independent public importance, and indeed may be any speech protected by the Amendment. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 284 (3d Cir. 2004). The problem with Plaintiff's claim is that ordering a pizza is not inherently First Amendment speech at all, but rather is a pure commercial act.

The purchase and sale of goods is in itself not protected activity under the First Amendment. *See United States v. Antzoulatos*, 962 F.2d 720, 726 (7th Cir. 1992) (sale of cars); *Nordyke v. Santa Clara County*, 110 F.3d 707, 710 (9th Cir. 1997) ("the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment."); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 93 (2d Cir. 2006) (sale of "mere commercial goods" not speech); *Al-Almin v. City of New York*, 979 F. Supp. 168, 173 (E.D.N.Y. 1997) (beads and perfume oils); *Saad v. Vill. of Orland Park*, 11 C 7419, 2012 WL 2721942, at *7 (N.D. Ill. July 9, 2012) (tobacco); *Chase v. Town of Ocean City*, 825 F. Supp. 2d 599, 623 (D. Md. 2011)

(ordinance banning sales of all goods is an area "is an economic regulation . . . . Clearly, in the majority of its applications, the ordinance does not pose First Amendment issues.").

To be sure, the sale of certain goods can implicate the First Amendment when it is "inextricably intertwined" with an expressive message, and for that reason courts have held that sales of goods that convey particular expressive messages may not be curtailed.  *E.g. Mastrovincenzo*, 435 F.3d at 91 ("we must ultimately determine whether the disseminators of that clothing are genuinely and primarily engaged in artistic self-expression or whether the sale of such goods is instead a chiefly commercial exercise"); *Friends of the Vietnam Veterans Mem'l v. Kennedy*, 116 F.3d 495, 497 & n. 2 (D.C.Cir. 1997) (message-bearing T-shirts); *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996) (visual artwork).  It is apparent that, unlike the sale of items such as works of art and message-bearing T-shirts, the sale of a pizza does not contain any higher communicative element.  At least ninety-nine times out of a hundred, a pizza is just a pizza, and there is nothing about this transaction that moves it to that one-in-one-hundred category containing constitutionally-protected expressive conduct.

Certainly, the sale of a pizza, like the sale of most goods in our culture, often necessarily involves the exchange of words: "How much is it?", "plain or pepperoni?", "deep-dish or thin crust?" But to transform those utterances that are incidental to the sale of goods into speech that is itself protected under the First Amendment would imbue almost any commercial or economic transaction with First Amendment protection.  *See Chase*, 825 F. Supp. 2d at 623 ("the fact that the ordinance necessarily prohibits a vendor from making the types of communications that are inherent in any sale of a product . . . does not subject it to First Amendment scrutiny").[5]

---

[5] It is also worth noticing that placing an order for a pizza is not "commercial speech," which enjoys a lessened degree of First Amendment protection, but protection nonetheless. The Supreme Court has defined commercial speech as speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976). Unlike an advertisement, ordering a pizza does not propose

Within the facts of this case, the result is even clearer. Officer Corrado did not in any way hear or otherwise perceive Mr. Posey's verbalization of ordering the pizza, nor was the content of Mr. Posey's words in ordering the pizza the reason for Officer Corrado's alleged wrath. That was alleged to be Officer Corrado's receipt of an unwanted pizza bearing the name of Herman Posey, the unfortunate result of the pizza shop's mistargeted attempt to perform its end of a commercial transaction. Thus, Officer Corrado's asserted retaliatory act was not linked to any even hypothetical First Amendment expression embodied in the pizza or in Posey's ordering of it, and Mr. Posey also cannot meet the third element of a First Amendment retaliation claim. Because Mr. Posey did not engage in any constitutionally-protected speech in ordering a pizza, that activity cannot form the basis of a First Amendment § 1983 claim.

### 2. *Filing a Police Report*

Mr. Posey's filing a police report for the theft of his stolen goods requires a deeper analysis. The Court will assume that Mr. Posey can make out the elements of a *prima facie* case of First Amendment retaliation: that filing a police report is First Amendment-protected activity, that a retaliatory arrest and prosecution would deter a person from ordinary firmness in exercising that speech, and that there was a sufficient causal connection between the report and the initiation of criminal proceedings. Read in the light most favorable to Mr. Posey, he asserts a claim of (a) retaliatory false arrest and malicious prosecution, as well as (b) retaliation when Officer Corrado caused the VA's office to alter Mr. Posey's account information. *See* Resp. at 28.

---

a transaction; it *is* a transaction. *See Nordyke*, 110 F.3d at 710 (sale of gun is not "speech" and thus garners no First Amendment protection, while "offering [a gun] for sale" is commercial speech warranting some protection).

a.   False Arrest and Malicious Prosecution

Claims of false arrest or retaliatory prosecution under the First Amendment, unlike such claims under the Fourth Amendment, do not require that a § 1983 plaintiff establish that he was "seized" within the meaning of the Fourth Amendment. *Johnson v. Knorr,* 477 F.3d 75, 82 n.8 (3d Cir. 2007).   However, § 1983 claims of false arrest and malicious prosecution under the First Amendment carry other hurdles that Mr. Posey cannot surpass.   The Supreme Court has held that in order to state a claim of malicious prosecution under the First Amendment, a plaintiff must plead and prove a lack of probable cause supporting his underlying criminal charge. *Hartman v. Moore*, 547 U.S. 250, 252 (2006).   While the Court in *Hartman* did not pass on whether a First Amendment *false arrest* plaintiff must also plead and prove the absence of probable cause, it held this last term in *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012) that because a right to be free from such an arrest had not been clearly established, the defendant officers were entitled to qualified immunity.[6]

Therefore, the Court must first determine whether probable cause was present as to any of the charges asserted against Mr. Posey.

> Probable cause exists if there is a fair probability that the person committed the crime at issue. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. A police officer may be liable for civil damages for an arrest if no reasonable competent officer would conclude that probable cause exists.

*Wilson v. Russo*, 212 F.3d 781, 789-90 (3d Cir. 2000) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (internal marks and citations omitted). "Therefore, the evidentiary

---

[6] There is no clear precedent within the Third Circuit that would make such a right any more clearly established in this Circuit than in the conditions in the Tenth Circuit surveyed by the Court in *Reichle*, and so *Reichle*'s application is not diminished here.

standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

Mr. Posey was charged with two state crimes: (1) Filing a False Report to Law Enforcement, 18 Pa. Cons. Stat. § 4906(b)(1), and (2) Theft by Deception, 18 Pa. Cons. Stat. § 3922, "alleging that Mr. Posey improperly received $1000 for his scooter." Compl. ¶ 21. As to the first count, Pa. Cons. Stat. § 4906(b)(1) makes it a crime for a person to "report[] to law enforcement authorities an offense or other incident within their concern knowing that it did not occur . . .". On October 19, 2010, Mr. Posey filed with Officer Mercalde a report stating that his mobility scooter and lawn mower were stolen. Am. Compl. ¶¶ 13-15. Around November 9, 2010, Joseph Posey informed Officer Mercalde that the items were not stolen, but that Mr. Posey had sold them to their brother Elijah for $1,000. *Id.* ¶ 16. On that same date, Elijah confirmed that Mr. Posey had sold him the scooter for $1,000. *Id.* ¶ 17. On November 23, 2010, Officer Corrado went to Elijah's residence and found a mobility scooter that he believed was the same one reported. *Id.* ¶ 18.

Based on the information presented to the Defendant Officers, the Court concludes that there was probable cause to charge Mr. Posey with the false reporting of a crime. The police had received agreeing accounts from two of the Posey brothers that the scooter had been sold, not stolen, and had actually discovered the scooter at Elijah's house. Thus, there was at least a "fair probability" that the scooter had indeed not been stolen, and that Mr. Posey falsely reported its theft in violation of § 4906(b)(1).

While Mr. Posey's Amended Complaint maligns the fact that the police did not conduct a sufficiently thorough investigation of the crime, such as by seeing whether Elijah had a "receipt or any other proof" supporting his statements, or discuss the matter with Mr. Posey himself

before charging him, "the law does not require that a prosecutor explore every potentially exculpatory lead before filing a criminal complaint or initiating a prosecution." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001). Nor is there merit in Mr. Posey's assertion that the prosecutor's decision to later drop the charges against him, Pa. R. Crim. P. 561(A), demonstrates itself the absence of probable cause: "the ultimate . . . dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid." *Valenti v. Sheeler*, 765 F. Supp. 227, 230 (E.D. Pa. 1991) (citing *Pierson v. Ray,* 386 U.S. 547, 555 (1967)). Therefore, there was probable cause for initiating a prosecution, via summons, against Mr. Posey, and at a minimum, the Defendant Officers' determinations were well within reason so as to be shielded by qualified immunity, which "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal marks and citations omitted).

While probable cause certainly existed as to the first count, it is less clear whether it existed for the second count.[7] However, under the circumstances present here, the presence of probable cause as to at least one of the crimes charged vitiates both a false arrest and a malicious prosecution claim as to all counts. The Third Circuit has held that if probable cause is present as to any single charge, a false arrest claim based on multiple charges cannot stand. *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007).[8]

---

[7] Under 18 Pa. Cons. Stat. § 3922, "A person is guilty of theft if he intentionally obtains or withholds property of another by deception."

[8] Also, Mr. Posey was bound over for trial on both charges at the preliminary hearing on February 23, 2011, which could only occur if the local magistrate had found probable cause as to those charges. Pa. R. Crim. P. 542(D); 543(B).

However, it has wavered as to whether the same rule applies for a malicious prosecution claim. First, in *Wright*, 409 F.3d at 604, the court held that the presence of probable cause as to any count destroys a malicious prosecution claim as to the rest. Then, in *Johnson,* 477 F.3d at 82, a different panel held that that was not necessarily so, and reversed a district court for dismissing a malicious prosecution claim where probable cause was only present as to one charge. *Johnson* noted that under some factual circumstances, *e.g.* where a prosecutor tacked on a more serious charge not based in probable cause to a lesser charge that was so based, and the harsher charge resulted in the imposition of additional burdens on the individual, a plaintiff could still go forward on a malicious prosecution claim based on that first charge. *Id.* at 83-84.

The Third Circuit then considered the question *en banc*, but the issue remains murky. In *Kossler v. Crisanti*, 564 F.3d 181, 194 n. 8 (3d Cir. 2009) (*en banc*), the court noted that *Wright* and *Johnson* were "difficult to reconcile," and noted that to the extent that the two cases were in "unavoidable conflict," *Wright* would control as the earlier-decided case. The majority of the lower court decisions following and considering *Kossler* have held that *Wright* does indeed control. *See Turosik v. Hougue*, CIV. 08-1248, 2011 WL 1044648, at *7 n.4 (W.D. Pa. Mar. 18, 2011); *Griffin v. Walbert*, 3:11-CV-924, 2012 WL 123560, at *5 n.4 (M.D. Pa. Jan. 17, 2012); *see also Minatee v. Phila. Police Department*, 2012 WL 5359527 (3d Cir. Nov. 1, 2012) (unreported). *But see Piazza v. Lakkis*, 3:11-CV-2130, 2012 WL 2007112, at *11 (M.D. Pa. June 5, 2012) (*Johnson* controls). This Court agrees with the other district courts that hold in light of the Third Circuit's *en banc* statements in *Kossler*, the *Wright* rule that states that if probable cause is present as to any one count, a defendant charged on multiple counts cannot state a § 1983 claim for malicious prosecution, governs.

Moreover, the Court notes that to the extent that the choice between *Wright* and *Johnson* is in doubt, the qualified immunity analysis dictates the answer here. The question before this Court (and before the Third Circuit in *Wright*, *Johnson*, and *Kossler*) is whether an individual has a right to be free of a Fourth Amendment retaliatory prosecution where probable cause is present as to one, but not all, charges.[9] The existence and extent of any such right, as espoused by *Johnson*, but not *Wright*, is far from "clearly established" in this Circuit for qualified immunity purposes. Because the Defendant Officers established probable cause for at least one of the criminal charges in initiating a prosecution against Mr. Posey, they did not deprive Mr. Posey any clearly established constitutional right, and thus are entitled to qualified immunity for their actions. Plaintiff's First Amendment claims sounding in false arrest and malicious prosecution are dismissed with prejudice.[10]

### b. Interference with the Veteran's Administration

Mr. Posey also asserts that Officer Corrado retaliated against his filing of the police report when Officer Corrado told the VA that he was a "criminal," and convinced the staff member to alter his account number so that he would not receive his VA payments. Again reviewing the elements of a First Amendment retaliation claim, (1) protected activity, (2) retaliation sufficient to deter a person of ordinary firmness, and (3) causal connection, the Court

---

[9] This question is analogous to that the Supreme Court faced in *Reichle*, 132 S. Ct. 2088. As noted above, the Court considered the question whether a First Amendment retaliatory arrest claim can stand when probable cause has been found. It noted that its case in *Hartman*, 547 U.S. 250 had held that a First Amendment retaliatory prosecution claim could not, but did not speak on retaliatory arrest. *Id.* at 2094. The Court held that although *Hartman*'s rule did not apply in all circumstances with equal force to retaliatory arrests, such a non-application was not clearly established for qualified immunity purposes. Therefore, the defendant officers were granted qualified immunity for a First Amendment retaliatory arrest where probable cause was present: "We conclude that, at the time of Howards' arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment." *Reichle*, 132 S. Ct. at 2093. In other words, the question that the Court asked in *Reichle* was whether it was clearly established that an individual has a right to be free of a First Amendment retaliatory arrest where probable cause is present, a question that it answered in the negative.

[10] Because the Court has determined that there was probable cause as to at least one charge initiated against Mr. Posey, his claims of false arrest and malicious prosecution under the Fourth Amendment in Counts I-IV would also fail on this ground.

will assume that Mr. Posey engaged in protected activity by filing a police report. Also, based on the facts as pled, the Court concludes that a significant disruption in a person's ability to receive government payments on which he depends would deter a person of ordinary firmness from exercising his free speech rights.

> Turning to causation,

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff . . . usually must prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007). If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation. *Id.*

*DeFranco v. Wolfe,* 387 F. App'x 147, 154 (3d Cir. 2010). With regards to temporal proximity, Mr. Posey filed the police report in November 2011, and the alleged retaliation took place around August 2012, a gap of approximately nine (9) months. (If the Court views the initiation of charges in January 2012 as part of a "pattern of harassment" leveled against Mr. Posey, the temporal gap would instead be around seven (7) months). Even seven months is too long a period of time to generate on its own an inference of causation. *See DeFranco,* 387 F. App'x at 155 (two months insufficient); *Bailey v. Commercial National Insurance Co.,* 267 F. App'x 167, 170 (3d Cir. 2008) (four months insufficient); *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 263 (2001) (citing favorably *Hughes v. Derwinski,* 967 F.3d 168, 1174 (7th Cir. 1992) (four months insufficient)). Nor has Mr. Posey pointed to a "pattern of antagonism" temporally lying between the October 2010 speech and the August 2012 retaliatory action. Again, even viewing the initiation of charges as an intervening antagonistic activity (although the Court has already determined that there was probable cause for that activity), Mr. Posey points to no other

antagonistic activities allegedly perpetrated by Officer Corrado between January and August of 2012, defeating an assertion of a "pattern of antagonism."

However, viewing the facts alleged as a whole, in the light most favorable to Mr. Posey, the Court concludes that the facts may suffice to raise an inference of causation. The most apparent support for this conclusion is the fact that the alleged retaliatory action that was taken, purposefully inducing a VA employee to disrupt the payment of money properly owing to Mr. Posey, can have absolutely no legitimate law enforcement justification. Officer Corrado going to the VA to 'make a point' about Mr. Posey is simply not police work. Thus, this case is unlike the vast majority of First Amendment retaliation cases asserted against law enforcement officers, which challenge activities such as arrests and prosecutions which they necessarily perform within the scope of their duties, and which often have very legitimate, non-retaliatory reasons. *Cf. Carter v. Morrison*, CIV.A. 06-3000, 2010 WL 701799, at *12 (E.D. Pa. Feb. 24, 2010), *aff'd sub nom. Carter v. Morrisson*, 429 F. App'x 114 (3d Cir. 2011) (collecting cases).[11] Additionally, while temporal proximity alone cannot give rise to an inference of causation in a case such as this, the fact that the retaliatory activity occurred during the prosecution of Mr. Posey for filing a false police report, the same activity which Mr. Posey asserts as his protected speech under the First Amendment, supports a causational inference here. Therefore, Defendants' Motion to Dismiss is denied only with respect to Plaintiff's claim of First Amendment retaliation against Officer Corrado in his individual capacity, for Officer Corrado's

---

[11] It is for this reason that this Court, while mindful of our Court of Appeals' admonition that a "court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate," *Lauren W.*, 480 F.3d at 267, concludes that that admonition does not apply under facts such as these, where there is no way that the law enforcement officer's action, if taken as alleged, could have been "deemed appropriate."

alleged interference with Mr. Posey's Veteran's Administration payments in retaliation for Mr. Posey filing the police report.

### C. Sixth Amendment Claims

Mr. Posey also asserts that his Sixth Amendment right to a speedy trial[12] was violated when (1) Officer Corrado "asked for a continuance" of his criminal trial on August 16, 2011, which was granted, and (2) Defendant Officers Corrado and Mercalde did not appear at the trial that was rescheduled for November 28, 2011 (nor did witnesses Joseph and Elijah Posey), resulting in a continuance of the trial to December 20, 2011, at which time the prosecution entered a *nolle prosequi*. Am. Compl. ¶¶ 28, 32-33. There were two other continuances of the trial, but Mr. Posey does not allege that they were the fault of any defendant. *Id.* ¶¶ 29, 32.

Mr. Posey's Sixth Amendment claim is flawed in several aspects. First, a number of courts have held a § 1983 plaintiff cannot pursue a claim based on a Sixth Amendment speedy trial violation where, as here, the charges against the plaintiff were dismissed. *See Young v. City of Hackensack*, 04-CV-2011, 2005 WL 1924327, at *2 (D.N.J. Aug. 11, 2005) ("Because plaintiff's case did not go to trial, his right to a speedy trial is not at issue."), *aff'd*, 178 F. App'x 169 (3d Cir. 2006); *Roth v. Lundell*, 05-C-148-C, 2005 WL 1046494, at *5 (W.D. Wis. May 4, 2005); *Hall v. Alabama*, 2:09-CV-342-MHT WO, 2010 WL 582076, at *4 (M.D. Ala. Feb. 18, 2010); *Kent v. Cal. Dep't of Consumer Affairs*, 2:09-CV-02905 KJM, 2011 WL 2580382, at *9 (E.D. Cal. June 28, 2011) *report and recommendation adopted in part*, CIV-S-09-02905 KJM, 2011 WL 4543087 (E.D. Cal. Sept. 26, 2011); *see also Heyerman v. County of Calhoun*, 680 F.3d 642, 649-50 (6th Cir. 2012) (Sutton, J., concurring) ("The Sixth Amendment guarantees speedy trials, not speedy detentions.").

---

[12] The Sixth Amendment guarantees the right of an accused "to a speedy and public trial." U.S. Const. amend. VI.

Second, other courts have held that as a general matter, monetary damages are not available to a § 1983 plaintiff asserting a violation of his Sixth Amendment speedy trial right altogether. *See Cayton v. United States,* 168 F.3d 1322, (Fed. Cir. 1998) (unpublished opinion); *Bauman v. Hidalgo Cnty., Texas,* No. M-Civ.A. 04-145, 2005 WL 1653082, at *5 n. 1 (S.D. Tex. July 6, 2005); *Quinn v. Roach,* 326 F. App'x 280, 290 (5th Cir. 2009) ("The only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal of any criminal charges.") (citing *United States v. MacDonald,* 435 U.S. 850, 861 n. 7 (1978) ("[T]his Court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated.")).

Third, Mr. Posey also fails to sufficiently establish that any activities of *these particular defendants* were responsible for any speedy trial violation he suffered. Again, Mr. Posey only alleges that Officer Corrado once "asked for a continuance," Am. Compl. ¶¶ 28, 32-33, and that Officers Corrado and Mercalde failed to be present at trial on another occasion. This Court is not aware of any case holding that a police officer serving as a witness (or even as a prosecuting officer) can be a proper defendant in a § 1983 case asserting a speedy trial violation. Rather than the police, prosecutors are the entities who seek continuances, and judges are the entities who grant or deny them.

Fourth, even if Mr. Posey's speedy trial claim is not barred for the reasons just explained, the Court concludes that Mr. Posey cannot demonstrate that he was "prejudiced" by any of the delays caused by the Defendant Officers, as he must. "A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause." *Reed v. Farley,* 512 U.S. 339, 353 (1994). "There are three types of prejudice that can result from a pretrial delay: (1) oppressive pretrial incarceration; (2) the accused's anxiety and concern over the outcome of the

litigation; and (3) impairment of the defense. *Barker v. Wingo,* 407 U.S. 514, 532 (1972). Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Id.*" *United States v. Young,* 05-CR-0056-16, 2011 WL 4056729, at *9 (E.D. Pa. Sept. 12, 2011). Here, Mr. Posey was released on bail and was not incarcerated pending trial, and thus the first type is not met. Nor, more importantly, is the third type met, because there was no presentation of any defense after the charges were dropped. While Mr. Posey's anxiety and concern may have been more acute during the three additional months of continuances to his trial, the Court cannot conclude that this anxiety, with nothing more, constitutes the requisite "prejudice" to give rise to the level of a constitutional violation.[13]

In short, Mr. Posey has not alleged sufficient facts, nor has this Court discovered any law, from which the Court can conclude that Mr. Posey suffered any speedy trial violation, that Officers Corrado or Mercalde personally effected any such violation, or that any such violation, even if suffered, can be now remedied. Therefore, Mr. Posey's Sixth Amendment claim will be dismissed with prejudice.

### D. Equal Protection Claims

In Count VII, Conspiracy to Violate Civil Rights; Denial of Equal Protection, §§ 1983 and 1985(2), Mr. Posey alleges that Officers Corrado, Mercalde, Haun, and Chief Geppert conspired to deprive him of his civil rights. The first section of § 1985(2), which relates to proceedings in a federal court, does not apply here. *See Brawer v. Horowitz,* 535 F.2d 830, 840 (3rd Cir. 1976).

---

[13] To the extent that even in light of *Reed* the presence of prejudice is not a *sine qua non* of a Sixth Amendment speedy trial violation, *see United States v. Oidac,* 486 F. App'x 318, 322 (3d Cir. 2012), Mr. Posey has not demonstrated how the remaining *Barker* factors can outweigh the lack of prejudice. Those factors are (1) the length of the delay, (2) the reason for the delay, and (3) the defendant's assertion of the right. *Barker,* 407 U.S. at 530. The delay in total was twelve months from charge to dismissal of charges, only three of which were attributable to any action of any defendant (from August 16 to October 5, and from November 28 to December 20); and Mr. Posey never alleges that he asserted his right even once. Therefore, even assuming the police sought continuances for improper reasons, the remaining *Barker* factors do not outweigh the lack of prejudice.

> [T]he second portion of § 1985(2) applies to conspiracies with the purpose of "impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . ." 42 U.S.C. § 1985(2). The federal nexus to this portion of § 1985(2) is "class-based, invidiously discriminatory animus." *Brawer,* 535 F.2d at 840. Thus, in order for a plaintiff to state a claim under the latter portion of § 1985(2), the plaintiff must allege class-based, invidiously discriminatory animus. *See id.*

*Fetzer v. Cambria Cnty. Human Servs.*, 384 F. Supp. 2d 813, 817 (W.D. Pa. 2005). Similarly, "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (internal marks omitted); *see City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

Here, Mr. Posey asserts only in the most conclusory fashion that "Defendants' actions were racially motivated, with an attempt to threaten and intimidate Plaintiff, an African American." Am. Compl. ¶ 43; *see also id.* ¶ 85 "Defendant Officers . . . who are all Caucasian, conspired to violate Plaintiff's civil rights and deny him equal protection of the law because Plaintiff is an African-American." But Mr. Posey points to no facts that support this allegation, other than the fact that he is African-American. He also does not assert any facts from which it could be concluded that there were any other similarly situated individuals who were treated differently from him. The Amended Complaint contains precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, that are insufficient to state a claim. *See also Mills v. City of Harrisburg*, 350 F. App'x 770, 774 (3d Cir. 2009) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (en banc) ("[m]ere conclusory allegations of deprivations of constitutional rights" insufficient)); *Davis v. Malitzki*, 451 F. App'x 228, 235 (3d

Cir. 2011) (§ 1983 plaintiff's assertion of discrimination based on minority status insufficiently pled without factually based allegations of similarly situated persons treated differently). Therefore, Mr. Posey's equal protection claims under §§ 1983 and 1985(2) in Count VII are dismissed with prejudice.[14]

### E. Due Process Claims

Mr. Posey also asserts in Count I of his Amended Complaint that his false arrest in violation of the Fourth Amendment also violated his Fourteenth Amendment substantive and procedural due process rights, Am. Compl. ¶ 53, and then more broadly in his Response that his due process rights were violated by many of the actions that the Defendant Officers took against him, and thus "[f]urther explanation would be duplicative," ECF No. 21 at 28.[15]

### 1. *Substantive Due Process*

As for Mr. Posey's substantive procedural due process claims, government employees only violate an individual's substantive due process rights "when their conduct amounts to an abuse of official power that 'shocks the conscience'". *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399 (3d Cir. 2003) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Throughout the litany of claims enumerated and evaluated above, none rises to the level of "conscience shocking." This is especially so in light of the Court's determination that there was probable cause to at least one of the criminal charges that were levied against Mr. Posey. Nor can the Court find that any of the other actions taken by the Defendant Officers, even if true, were "conscience shocking, in a constitutional sense." *Id.*

---

[14] Given that it is an *Amended* Complaint before the Court, the Court declines to authorize yet another amendment to the Complaint.

[15] The Court will assume *arguendo* that Mr. Posey had a cognizable liberty interest within the meaning of the Fourteenth Amendment at stake here, although the Court has already found that he did not suffer a Fourth Amendment "seizure" at the hands of any defendant, given that his brief incarceration could not be attributable to any actions of any of them.

Additionally, Mr. Posey admits that many of his substantive due process claims arise from the same actions that he challenged under other Amendments to the Constitution. To that end, they are barred by the so-called "explicit source rule." In *Albright*, the Supreme Court held that, in a § 1983 case, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citation omitted). The plurality noted that because the plaintiff alleged he was prosecuted without probable cause, he could only rely on the protections of the Fourth Amendment and not "substantive due process, with its scarce and open-ended guideposts." *Id.* at 275 (internal quotation omitted). Therefore, to the extent that Mr. Posey's substantive due process claims are "covered" by the First, Fourth, and Sixth Amendments, they are unavailable.

### 2. *Procedural Due Process*

The Amended Complaint does not state in what way Mr. Posey's procedural due process rights were violated (other than by briefly incorporating it in his Fourth Amendment false arrest claim, ¶ 53), but the Response offers two ways in which this right was allegedly violated: (1) his Sixth Amendment claim "is a clear example," and (2) "when Defendants refused to investigate his theft claims, instead charging him with criminal activity." Resp. at 30.

Fourteenth Amendment procedural due process creates a "guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. PA Dept. of Correction*, 544 F.3d 279, 285 (3d Cir. 2008). The fundamental requirement of due process is the

opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citation omitted).

With regard to Plaintiff's claim relating to the events leading up to his criminal charge – that he was arrested without probable cause, and that the police did not conduct a sufficient investigation before charging him – those claims are more properly analyzed under the Fourth Amendment rather than procedural due process.  Although the Court in *Albright* only held that substantive due process claims are barred by the explicit source rule, *see Merkle v. Upper Dublin School Dist.,* 211 F.3d 782, 792-93 (3d Cir. 2000), a number of courts in this Circuit have extended its reasoning to procedural due process claims in the false arrest and/or malicious prosecution context. *See, e.g., Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009) ("A procedural due process claim is therefore an inappropriate vehicle by which to seek vindication for a purportedly unlawful arrest"); *Williams v. City of Phila.*, CIV.A. 09-4826, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22, 2010); *Swedron v. Borough*, 08CV1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) ("as 'the gravamen' of his lawsuit is so clearly premised on a First and/or Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause, the Court will dismiss the procedural due process claim"); *see Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (noting that although in some circumstances procedural due process claims should be assessed independently, "we will limit our analysis of Berg's arrest to his Fourth Amendment claim").

This Court has already determined that (1) Mr. Posey was not "seized" within the meaning of the Fourth Amendment, and (2) there was probable cause to initiate criminal

proceedings against him under that Amendment, which would vitiate any Fourth Amendment claim. The Court also notes that Mr. Posey received a preliminary hearing, appeared before an impartial judge multiple times thereafter, and that the charges against him were ultimately voluntarily dismissed. Therefore, even if Mr. Posey had suffered the deprivation of any constitutional right by the events leading up to and including his criminal charge, he received all the process that was constitutionally due to him. *See Regan v. Upper Darby Twp.*, CIV A 06-1686, 2009 WL 650377, at \*15 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010) (no due process violation where "the charges against [Plaintiff] were dismissed, and there is no evidence that Plaintiff was ever denied access to counsel or the courts.").[16]

For similar reasons, Mr. Posey's procedural due process claim as it relates to his Sixth Amendment rights must fail. The *Barker* standard for speedy trial violations under the Due Process clause and the Speedy Trial clause is effectively the same. *See Burkett v. Fulcomer*, 951 F.2d 1431, 1446 (3d Cir. 1991) ("we do not discern a difference whether we discuss speedy trial or due process"); *Hudson v. Pennsylvania*, CIV. A. 07-1685, 2009 WL 137313, at \*3 n.2 (W.D. Pa. Jan. 20, 2009); *Miller v. Glover*, CIV.A. 09-2891 JAP, 2012 WL 870728, at \*19 (D.N.J. Mar. 14, 2012); *Barker v. Wingo,* 407 U.S. 514, 536 (1972) ("Barker was not deprived of his due process right to a speedy trial"). As the Court explained *supra*, Mr. Posey's claim cannot meet the *Barker* factors, most importantly because he was not prejudiced by any delay before the charges against him were dismissed. Therefore, Mr. Posey's procedural due process rights were not violated by any of the continuances of his trial date.

---

[16] Whether the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), which precludes § 1983 procedural due process claims where the state provides an adequate postdeprivation remedy, applies to a deprivation of liberty in a malicious prosecution or false arrest setting remains unclear in this Circuit, though some lower courts have suggested as much. See *Swedron*, 2008 WL 5051399, at \*5; *Taylor v. City of Phila.*, CIV.A. 96-740, 1998 WL 151802, at \*7 n.6 (E.D. Pa. Apr. 1, 1998). Because the Court has already enumerated two other reasons why Plaintiff's procedural due process claim is barred, it need not opine on whether under *Parratt*, the fact that the Commonwealth of Pennsylvania provides state law torts of false arrest and malicious prosecution bars Plaintiff's § 1983 procedural due process claim.

In sum, Plaintiff has not alleged any cognizable claim under either the substantive or procedural due process protections of the Fourteenth Amendment, and all such claims are dismissed with prejudice.

### F.  Failure to Train / Municipal Liability

Count V asserts a claim against Swissvale Borough and Chief Gepppert for a failure to train and supervise its employee police officers.  In the absence of a violation of a plaintiff's constitutional rights by any individual police officer, a municipality cannot be liable on a derivative claim under § 1983. *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  The Court has already determined that the only viable claim Mr. Posey has presented is Officer Corrado's alleged First Amendment retaliation relating to his interference with the Veteran's Administration.

Plaintiff has alleged a borough-wide "policy and practice" of constitutional violations in only the most conclusory of terms. *See* Am. Compl. ¶ 72.  "[A] plaintiff must claim a specific training deficiency, not rely on formulaic language contained within *Monell* and its progeny. In other words, 'bald assertions' regarding a lack of appropriate procedures will not suffice." *Barkley v. Westmoreland Cnty. Children's Bureau*, 853 F. Supp. 2d 522, 531 (W.D. Pa. 2012) (internal citations omitted); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  Mr. Posey's bald assertions of municipal responsibility cannot stand, especially given that a single action taken by Officer Corrado alone is the only predicate constitutional violation that could have occurred here.

For similar reasons, Plaintiff's claims against Chief Geppert must be dismissed.  Section 1983 does not permit respondeat superior liability, *City of Canton, Ohio v. Harris*, 489 U.S. 378,

385 (1989), and Plaintiff has in no way alleged that Chief Geppert's personal involvement in the sole constitutional violation here, Officer Corrado's interference with the VA. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Therefore, Count V must be dismissed, along with all other claims against Chief Geppert.[17]

Additionally, because Plaintiff has failed to state a claim of municipal liability, all claims against all Defendants in their official capacities must be dismissed with prejudice. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (official capacity suit is another way of pleading an action against the entity of which the officer is an agent).

### G. Section 1983 Conspiracy

Finally, in Count VI, Mr. Posey asserts a claim of conspiracy among the individual Defendants more generally to violate his federal constitutional rights. Similarly to § 1983 a municipal liability claim, there can be no § 1983 conspiracy claim without an underlying constitutional violation. *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010). Because the only remaining claim relates to Officer Corrado's actions at the VA, and Mr. Posey does not allege that this action took place as part of an agreement between Officer Corrado and any other Defendant Officers, this claim must be dismissed. *See Savage v. Judge*, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). Nor has Mr. Posey in any way alleged that the staff member at the VA whom Officer Corrado allegedly convinced to switch the account numbers was a co-conspirator of Officer Corrado's. *See* Am. Compl. ¶ 80 ("Defendant Officers Corrado, Mercalde, Haun and Chief Geppert conspired to violate Plaintiff's civil rights"). "[A] plaintiff must allege with particularity and

---

[17] Mr. Posey does not assert Chief Geppert's personal involvement in any of the alleged wrongs except to state that he "approved" Officer Mercalde's filing of Mr. Posey's initial report for theft of stolen goods. Am. Compl. ¶ 53. But because Mr. Posey alleges no wrong committed by the police in *accepting* his report of stolen goods, this action cannot form the basis of a constitutional claim against Chief Geppert.

present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right." *Savage*, 644 F. Supp. 2d at 561. Because Mr. Posey has not alleged with the requisite particularity that Officer Corrado conspired with any other person to violate Mr. Posey's civil rights when he interfered with Mr. Posey's VA benefits, and because all other predicate § 1983 claims have been dismissed, Count VI is also dismissed with prejudice.

### H.  State Law Claims

Because Plaintiff's state law claims share a common nucleus of operative fact with his remaining federal claim over which this Court has original jurisdiction, the Court may exercise supplemental jurisdiction over those claims.  *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  Plaintiff asserts the following state law claims: Count VIII, Intentional Infliction of Emotional Distress ("IIED"); Count IX, Malicious Prosecution; and Count X, Defamation.  The Court is extremely doubtful that Plaintiff is able to state a claim for relief under any of those three counts, for the reasons that follow.

#### 1.  Intentional Infliction of Emotional Distress

In Pennsylvania,

> There remains some question as to whether the courts of this Commonwealth recognize a cause of action for intentional infliction of emotional distress. *See, e.g., Hoy v. Angelone*, 720 A.2d 745, 753-54 n. 10 (Pa. 1998). However, our Supreme Court has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. *Id.*, at 754. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct. *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995). . . . [The conduct must be] "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society."

*Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (quoting *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)). The element of outrageousness is for the court to determine in the first instance. *Id.* Here, while Mr. Posey has listed a litany of alleged wrongs committed by the Defendant Officers, chiefly a baseless prosecution, an intentional interference with his VA benefits, and a delay of his trial, as a matter of law none of the bad conduct alleged rises to the level of "outrageous or extreme conduct" that goes "beyond all possible bounds of decency" as required in Pennsylvania. Therefore, the Court believes that Mr. Posey will not be able to state a claim for IIED under Pennsylvania law.

### 2.  Malicious Prosecution

In Pennsylvania, a plaintiff bringing a malicious prosecution claim must demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993)). For the reasons detailed above, the proceedings against Mr. Posey were initiated with probable cause. Therefore, the Court believes that Mr. Posey will not be able to state a claim for malicious prosecution under Pennsylvania law.

### 3.  Defamation

In Pennsylvania, in order for a statement to be defamatory, it must be untrue, although the burden of proving truth lies with the defendant. 42 Pa. Cons. Stat. § 8343. Mr. Posey alleges that Officer Corrado defamed him when he told an agent at the VA that Mr. Posey was "a criminal." Am. Compl. ¶ 30. Unfortunately for Mr. Posey, this statement was not untrue. An examination of state criminal public records reveals that Mr. Posey had been convicted of at least three crimes

at the time this statement was made.[18]   Therefore, Officer Corrado cannot be liable in defamation for his perhaps rude and improper, yet truthful statement. *See Serian v. Penguin Group (USA), Inc.*, CIV.A. 1:08CV74, 2009 WL 2225412, at *9 (N.D.W. Va. July 23, 2009) (defendant not liable for calling plaintiff "a crook" where plaintiff previously convicted of felonies). Therefore, the Court believes that Mr. Posey will not be able to state a claim for defamation under Pennsylvania law.

In sum, although this Court does not believe that Mr. Posey is able to state a plausible basis for any of his state law claims, in this Circuit, a district court's *sua sponte* dismissal of claims before a plaintiff has been given notice and an opportunity to respond is disfavored. *See Schneller ex rel. Schneller v. Fox Subacute at Clara Burke*, 317 F. App'x 135, 138 (3d Cir. 2008); *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007).   Therefore, Plaintiff shall have fourteen (14) days to show cause why Counts VIII, IX, and X should not be dismissed for their failure to state a claim.

## IV.   CONCLUSION

The Court has carefully considered the wrongs that Mr. Posey allegedly suffered at the hands of members of the Police Department of Swissvale Borough, which seemed to unwind from the errant delivery of a pizza.   While Mr. Posey has detailed a number of facts surrounding the initiation and eventual termination of the criminal proceedings against him, none of those facts plausibly give rise to a claim that his rights secured by the United States Constitution and asserted via 42 U.S.C. § 1983 were violated in a way so as to surpass the *Twiqbal*[19] threshold,

---

[18] They can be found at Docket Numbers MJ-05209-NT-0000109-2008 (18 Pa. Cons. Stat. § 2709(a)(1) Harassment – Guilty); MJ-05210-NT-0000175-2003 (18 Pa. Cons. Stat. § 4906(a) False Reporting – Guilty); MJ-05214-NT-0001260-2000 (18 Pa. Cons. Stat. § 5503(a)(1) Disorderly Conduct – Guilty).   The Court takes judicial notice of those state court records.

[19] "*Twiqbal*" refers to *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, collectively. *See Dec v. Pa. State Police*, 2:12-CV-565, 2012 WL 6099078, at *3 n.5 (W.D. Pa. Dec. 7, 2012).

except possibly for his First Amendment claim against Officer Corrado in his individual capacity regarding his interference with Mr. Posey's Veteran's Administration payments in retaliation for Mr. Posey filing a police report.

The Court concludes that, given the fact that Plaintiff has already once amended his complaint and the vast majority of his claims must fail as a matter of law, further amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Therefore, Counts I-VII are dismissed with prejudice, along with Plaintiff's Sixth and Fourteenth Amendment Due Process claims, referenced in Am. Compl. ¶¶ 2, 53. Plaintiff's claim against Officer Corrado under the First Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, remains to the extent described above. *See Virginia Tax Bd.*, 425 U.S. at 849 n.1. All federal law claims as to all defendants except Officer Corrado are dismissed with prejudice. No state law claims are asserted against Defendant Swissvale Borough, all federal claims against it are dismissed with prejudice.

Additionally, while the Court notes its grave doubts as to the validity of Plaintiff's state law claims, Plaintiff shall now be given fourteen (14) days to show cause why they should not also be dismissed.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: March 13th, 2013

cc:     All counsel of record