# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERMAN POSEY, JR.,       )
       )
       Plaintiff,       )       Civil Action No. 2:12-cv-955
       )
v.       )       Judge Mark R. Hornak
       )
SWISSVALE BOROUGH, et al,       )
       )
       Defendants.       )

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

The Plaintiff Herman Posey brought a multi-pronged Complaint against the Borough of Swissvale, Pennsylvania and several of its police officials claiming a wide array of Constitutional violations and state law torts, all surrounding his aborted prosecution in state court for the theft by deception and related offenses involving a "scooter" that the Department of Veteran's Affairs ("VA") provided to him.[1]

The Court will not repeat the litigation history of this case, which is set forth in detail in its Opinion relative to the Motion to Dismiss. ECF No. 27. After substantial litigation at the Motion to Dismiss stage, only two (2) claims are left, both against one (1) Defendant, Officer

---

[1] As explained in the Amended Complaint, ECF No. 14, there had been a history of interactions between the Plaintiff, several of his siblings, and various of the Swissvale Police. In this case, the Plaintiff had a mobility scooter issued to him by the VA. According to the Plaintiff, he ended up with two such scooters because scooter #1, with 3 wheels, was unstable, so the VA issued him a second scooter (scooter #2) with 4 wheels. Then, scooter #1 went missing from Plaintiff's shed, so he filed a theft report with the Swissvale Police. Thereafter, the Plaintiff's brother Joseph went to the Swissvale Police, claiming that the Plaintiff stole his (Joseph's) Social Security check. While there, in response to a question from yet another Swissvale Police Officer (Officer Mercalde), Joseph Posey reported that the Plaintiff had sold scooter #1 to yet another Posey sibling, Elijah Posey, for $1,000. When questioned by Officer Corrado, Elijah Posey reported that that was exactly what had happened. Then, when Officer Corrado went to Elijah Posey's home, lo and behold, there was a scooter matching the description of scooter #1. This led to another Swissvale officer, Officer Mercalde, filing the state criminal charges that the Plaintiff says were retaliatory. According the Plaintiff, both of his brothers should have been disbelieved because they each had a criminal record for fraud and theft. Of course, as noted below, the Plaintiff had a similar record himself.

John A. Corrado. They are a First Amendment retaliation claim and a Pennsylvania law defamation claim. The gravamen of them is that Officer Corrado "got back at" the Plaintiff by advising two (2) officials at a Pittsburgh-area Veteran's Administration ("VA") Hospital that the Plaintiff was a "criminal" and that as a result, one (1) of his monthly veterans' benefits checks was delayed in receipt by two (2) weeks. As part of discovery in this case, the depositions of each such VA employee were taken, as were those of Mr. Posey and Officer Corrado. Based on that discovery record, Officer Corrado moves for summary judgment in his favor on all claims.

After the summary judgment motion was filed, Mr. Posey's then-lawyer, Robert Owsiany, moved to withdraw as counsel. ECF No. 48. He advised the Court, both in writing and in open Court in the Plaintiff's presence, that he could not in good faith continue as counsel because he did not believe that he could file an opposition to the summary judgment motion consistent with his duties as a lawyer, his obligations to the Court, or consistent with Fed. R. Civ. P. 11. The Court granted that Motion, ECF No. 52, and then gave the Plaintiff an extra-long period of time to obtain new counsel, and to file a response to Officer Corrado's summary judgment motion. *See* Text Order of May 19, 2014. The Plaintiff has filed a response *pro se,* ECF No. 55, Officer Corrado has filed a reply, ECF No. 56, and the Motion is ripe for disposition. [2]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

---

[2] Officer Corrado's deposition is filed at ECF No. 47-2; Ms. Proctor's at ECF No. 47-3; Ms. McAfee's at ECF No. 47-5; the Plaintiff's at 47-1.

the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(a), (e))(emphasis in original). In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

In reviewing the record evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita*, 475 U.S. at 587–88; *Huston*, 568 F.3d at 104 (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247

3

(3d Cir. 2004); *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." *See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 323–24).

The heart of the Plaintiff's case is that in order to get back at him for protesting the treatment Officer Corrado subjected him to related to the charges filed over the scooter[3], Officer Corrado went to the VA Hospital in Pittsburgh, and told the two officials there that the Plaintiff was "a criminal," and then induced them to interfere with the regular and timely transmittal of his VA benefits check. Officer Corrado has denied doing any such thing. The two VA employees deposed, Tammy Proctor and Carol Ann McAfee, not only denied being told by Corrado that Mr. Posey was a "criminal", but more importantly, they denied ever being asked to get in the way of his benefits' payment. They also testified that in their positions, at their VA facility, they could not possibly cause any delay in the payment of those benefits. They testified that their facility had nothing at all to do with such things, and that all benefits payments were handled out of an entirely different VA office. Proctor depo. at 16-22; McAfee depo. at 17.

Both Ms. Proctor and Ms. McAfee testified without contradiction that at no time did they have any conversation with Officer Corrado, or anyone else from Swissvale Borough, about Mr. Posey's benefits checks, or the timing of their transmittal or payment. The Plaintiff in his deposition could offer nothing but his own conjecture that Officer Corrado had anything at all to

---

[3] As relayed in the Court's prior Opinion, ECF No. 22, the Plaintiff also contended that Officer Corrado was angry with him because Corrado believed that Plaintiff had engineered the misdelivery of a pizza to Corrado's residence. The pizza caper was explored in greater detail in the Court's prior Opinion, in which it concluded that even if that misadventure had occurred, it did not involve expressive conduct for First Amendment purposes, such that any retaliation claim based on that delivery miscue could not support a First Amendment claim. ECF No. 22 at 13.

do with the delay (of two weeks) in the payment of his VA benefits. Posey depo. at 55-62. Further, the record is crystal clear that as to the alleged "First Amendment retaliation", Officer Corrado was not the police officer that filed the scooter-related charges against the Plaintiff in the first place. Thus, the record established in discovery reveals that there is no issue of fact at all on this point. There is nothing from which a rational jury could conclude that anything Officer Corrado did interfered with, or attempted to interfere with, Mr. Posey's VA benefits. Thus, there is zero admissible evidence going to the causation issue which this Court said might exist when it denied Officer Corrado's Motion to Dismiss the Amended Complaint. ECF No. 22 at 21-22.

Because there is no genuine issue of material fact on that point, and Officer Corrado is entitled to a judgment in his favor as a matter of law on this claim, summary judgment will be granted in favor of the Defendant and against the Plaintiff on the First Amendment retaliation claim, the only remaining federal claim in the case.

As to the state law defamation claim, it is pretty clear from the record that in a single alleged conversation with Ms. Proctor[4], Officer Corrado at the most told her two (2) things about the Plaintiff and the scooter. First, that he believed that the Plaintiff had sold it to his (Plaintiff's) brother for $1,000 (based on the report of his brother Elijah), and second, because the Plaintiff had done that, the Plaintiff was going to be charged with theft by deception of the scooter, a scooter which the Plaintiff had reported as stolen to the Swissvale Police Department. While navigating the disposition of this claim is a bit trickier, nonetheless, it fails.[5]

---

[4] "Alleged", because Ms. Proctor did not recall any such conversation, although her notes appear to reflect some sort of communication by Officer Corrado.

[5] In the Plaintiff's Amended Complaint, his claim is grounded on the allegation that Ms. Proctor was told by Officer Corrado that the Plaintiff was "a criminal". As the Court noted in its earlier Opinion, ECF No. 22, that statement is in fact true. The Plaintiff has a criminal record of criminal convictions. He is, literally, "a criminal". ECF No. 22 at 33, n. 18. Further, Ms. Proctor testified that Officer Corrado never told her that the Plaintiff was "a criminal". Proctor depo. at 15. Now, the Plaintiff seems to switch gears, and contends that the defamation claim is made out because Ms. Proctor's office notes reflect that Officer Corrado told Ms. Proctor that the Plaintiff was going to be

Recall that the Plaintiff was issued a three-wheeled scooter by the VA, a/k/a scooter #1. He complained about the tipsy nature of it, and the VA agreed to replace it with a four-wheel model, a/k/a scooter #2. Ms. Proctor testified that once the VA gives a veteran a scooter, the VA considers it to be the property of the veteran, to be disposed as he wants. At the same time, she also said that it was standard practice that when the new scooter is delivered, the old one is picked up for refurbishment by the VA and use by another veteran. When the vendor went to pick up Mr. Posey's three-wheeled scooter, Mr. Posey could not produce it. [6] Apparently, at about the same time, he also told the Swissvale Police that it had been stolen, notwithstanding the fact that his (Plaintiff's) brother Elijah had it.

A defamation claim requires, among other things, that the alleged defamatory statement be false, and that it be reasonably understood by the recipient as being defamatory. *Marier v. Lance*, 2009 WL 297713 (3d Cir. Feb. 9, 2009). In the first place, the statement that Mr. Posey sold the scooter to his brother for $1,000 could not have been understood by Ms. Proctor as being defamatory of Mr. Posey, since not only was she the only one that heard it, but she testified that from the perspective of the VA, scooter #1 was Plaintiff's to do with as he would, so his selling it was not an accusation of Mr. Posey doing anything wrong from the perspective of Ms. Proctor or the VA.

As to the statement by Officer Corrado that Mr. Posey was going to be charged with theft by deception, Mr. Posey's claim runs into several problems. Not only did Ms. Proctor do nothing to impede the filing of those charges by, for instance, telling Officer Corrado that the VA was

---

charged with a scooter-related crime related to the Plaintiff's own report of scooter theft. Ms. Proctor had no independent recollection of any such comment by Officer Corrado. Proctor depo. at 15. If made, that statement was also true, since the Plaintiff was so charged. Officer Corrado testified that he did speak with "a woman" at the VA about the scooter in the context of his investigation, and that he did advise that person that the Plaintiff was being charged, in the context of his arranging for the service of hearing subpoenas on VA representatives Corrado depo. at 37-45.

[6] Proctor testified that Mr. Posey refused to return scooter #1. *See* Proctor depo. at 8-10.

6

ambivalent about what Mr. Posey did with scooter #1, but as it turns out, what Officer Corrado told Ms. Proctor in those regards was absolutely true. Mr. Posey was, indeed, going to be, and was, charged by the Swissvale Police with theft by deception. There is no issue of fact in those regards, since Mr. Posey pleads as much in his Amended Complaint. ECF No. 14 at 22. Thus, the statement that such a charge was going to be preferred against Mr. Posey was true, and the Plaintiff admits as much in his pleading.[7]

More than this, there is no factual basis to conclude that Officer Corrado did not have a good faith, non-malicious basis for making this statement, if it is construed as going beyond the reality of the actual criminal charges filed to making a direct accusation against Mr. Posey.[8] Mr. Posey's own Amended Complaint alleges that the criminal charges were the result of his own brother Elijah going to the Swissvale Police and reporting that he, Elijah, had the scooter (scooter #1) that the Plaintiff had reported stolen, and that the Plaintiff had been paid $1,000 for the scooter.

Communications are privileged when they are made on a proper occasion, from a proper motive in a proper manner. *Beckman v. Dunn*, 419 A. 2d 583 (Pa. Super. 1980). This happens when "any one of several persons having a common interest in a particular subject matter correctly or reasonably [to] believe that facts exist which another sharing such common interest is entitled to know". *Rankin v. Phillippe*, 211 A. 2d 56, 58 (Pa. Super. 1965). To overcome

_____

[7] In addition, since even the Plaintiff concedes that if the statement was made, it was to only one person, Ms. Proctor, and then only within one office of the VA, Pennsylvania law would seem to hold that this is insufficient to make out a defamation claim, given the very limited nature of the audience of one. *Rybas v. Wapner*, 457 A. 2d 108, 111 (Pa. Super. 1983).

[8] The Court believes it appropriate to consider this possibility also since under Pennsylvania law, a statement that is literally true and accurate may still support a defamation claim if in context, the statement could create a false implication. *See Graboff v. Colleran Firm*, 744 F. 3d 128, 136 (3d Cir. 2014). Giving the Plaintiff a generous benefit of the doubt, the Court examines this issue further on the basis that perhaps it could be concluded that a police officer's statement that someone was going to be charged with a certain crime could be taken to mean that such person had committed that crime. *See* ECF No. 27 at 6-7. The Court does not so hold, but only considers that concept out of an abundance of completeness, given the Plaintiff's *pro se* status.

summary judgment, a non-moving party must demonstrate facts that show that such a privilege would not apply, since a defamation plaintiff must show the abuse of any applicable privilege if the facts demonstrate the privilege's existence and application. 42 Pa. Cons. Stat. Ann. §8343(a)(7); *Maier v. Maretti*, 671 A. 2d 701, 706 (Pa. Super. 1995), *appeal denied*, 694 A. 2d 622 (Pa. 1997); *see Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986)(party with burden of persuasion must show a genuine issue of fact exists as to any element of its case). This occurs if a plaintiff can show that the privilege was "abused" in that the communication was triggered by malice or negligence, was made for an improper purpose, or was made to a person as to whom such communication is wholly unnecessary. *See Maier*, 671 A. 2d at 706, n. 1.

Here, there is no question that facially, the statement that the Plaintiff now complains of is conditionally privileged. Plainly, there was a common interest between Officer Corrado and the VA - - he was calling the VA about their scooter (or at least what he reasonably believed to be the VA's scooter) which had been reported stolen by the Plaintiff, but was then resurrected in his brother Elijah's shed. In the context of that conversation, it would be perfectly legitimate and reasonable for him to fill in the VA on what he believed at that point in his investigation of the scooter situation, namely that the Plaintiff's brother had reported that he had purchased the VA-issued three wheeled scooter for $1,000 from the Plaintiff, and that as a result of the Plaintiff's report of a "theft" of that scooter, which the Swissvale police believed to be false, the Plaintiff was going to be charged with theft by deception.

The Plaintiff has offered up no record evidence that would suggest to a rational jury that Officer Corrado did not have a proper purpose in communicating with the VA about the status of a federally-funded scooter that it had issued, and which Officer Corrado believed that the VA had an interest in (a notion that Ms. Proctor did not disabuse him of at all), or in telling the VA

8

representative what course of action was going to follow, namely that the Plaintiff was to be charged exactly as was stated (something Ms. Proctor did not push back against).

Further, given the Plaintiff's own pleading that the Swissvale police were relying on the fact that the scooter that he had reported stolen was found in his brother's backyard shed, and that such brother had told the police that he had bought it from Mr. Posey for $1,000, it can hardly be "negligent" for the police to contact the VA as part of their investigation about the scooter that it had issued to the Plaintiff with taxpayer dollars, and which in the normal course the VA would have expected to retrieve from the Plaintiff when a replacement scooter was issued.[9]

---

[9] It is not at all surprising that Officer Corrado would believe that the VA would have an interest in the whereabouts of scooter #1. Why? For starters, Proctor testified that in the normal course, the VA would want scooter #1 returned to be refurbished for use by another veteran, and that the Plaintiff had refused to return scooter #1. Second, Corrado had before him a suspicious set of circumstances, starting with the Plaintiff's report of the theft of scooter #1, to his brother Elijah's report, corroborated by Joseph, that scooter #1 was not stolen at all but was instead parked at the ready in Elijah's shed after having been purchased from the Plaintiff for $1,000. It is not at all surprising to the Court that Officer Corrado, or likely any other police officer or even taxpayer, would have concluded that the VA would be very interested in the disposition of scooter #1. In any event, it is perfectly reasonable, absent any evidence to the contrary, that a police officer looking into this matter would call the VA and have the conversation that Proctor's notes say that Corrado had with Proctor (McAfee testified that she never spoke with any Swissvale Police officer, McAfee depo. at 19), as he investigated the alleged scooter caper. Corrado depo. at 43. It is also worth noting that the Plaintiff himself got the ball rolling on this entire escapade with his original report of the theft of scooter #1. It should hardly be surprising to him that the police would talk with the VA about that as part of their investigation. Finally, Ms. Proctor had a golden opportunity to push back against the filing of any charges against the Plaintiff when she supposedly spoke with Corrado, if she or the VA thought that this was all some big misunderstanding on the part of Officer Corrado. She apparently did not.

Because the statements Plaintiff's says are to be attributed to Officer Corrado in his one phone call with Ms. Proctor were either literally true, or incapable of being construed by Ms. Proctor as being defamatory, and because in any event, the statement about the looming criminal charges made in that call (if made at all) were privileged, and there is no record evidence of the abuse of any such privilege, summary judgment on the Plaintiff's defamation claim will be granted in favor of Officer Corrado, and against the Plaintiff.

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: July 28, 2014

cc:     All counsel of record